## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

---

|  |  |  |
|---|---|---|
| NORMA ROWELLO and NORMA ROWELLO as Administrator of the Estate of STEVEN J. ROWELLO | : : : : : | |
| Plaintiff, | : : | Civil No. 12-4326 (RBK/JS) |
| v. | : : | **OPINION** |
| HEALTHCARE BENEFITS, INC. and UNUM LIFE INSURANCE COMPANY OF AMERICA a/k/a UNUM PROVIDENT | : : : : : : | |
| Defendants. | : : | |

---

**KUGLER**, United States District Judge:

This matter comes before the Court upon a motion filed by Defendant Unum Life Insurance Company of America a/k/a Unum Provident ("Unum") for summary judgment, and upon the cross-motion of Norma Rowello ("Plaintiff") for summary judgment. For the reasons stated herein, Unum's motion for summary judgment will be **GRANTED**, and Plaintiff's cross-motion will be **DENIED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's husband, Steven Rowello, was employed by The Cooper Health System ("Cooper") from April 13, 1987 until his death on December 22, 2011. Unum's Statement of Undisputed Material Facts ("SUMF") ¶ 1. Mr. Rowello participated in Cooper's employee welfare benefit plan (the "Plan") through HealthCare Benefits Trust, previously AllHealth Insurance Trust. Id. ¶¶ 2–3. Unum provides a Group Life Insurance Policy that funds these

benefits, while HealthCare Benefits, Inc. ("HCB") is the Plan Administrator and named fiduciary of the Plan.  Id. ¶4A–4B.  The Plan is "self-administered," which means that HCB and/or Cooper manages and administers the aspects of the Plan that include enrolling participants, providing them with information about the Plan's requirements, calculating and collecting premiums from employees, and submitting the premiums to Unum.  Id. ¶ 4D.  The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA").  See Sec. Am. Compl. Ex. E.

HCB provided Unum with the authority to make "benefit determinations," which included "determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting the enforcing the provisions of the Plan."  SUMF ¶ 4C; Ex. B.  On January 1, 2006, the Plan was amended and as a result, offered participants the opportunity to apply for additional supplemental life insurance benefits.  Id. ¶ 5.  The amended Plan provided:

> **WHEN CAN YOU APPLY FOR ADDITIONAL BENEFITS IF YOU APPLY MORE THAN 31 DAYS AFTER YOUR ELIGIBILITY DATE? (LATE ENTRANTS)**
>
> You can apply for additional benefits only during an annual enrollment period or within 31 days of a change in status.  Evidence of insurability is required for any amount of insurance.
>
> Unum and your Employer determine when the annual enrollment period begins and ends. Coverage applied for during an annual enrollment period will begin at 12:01 a.m. on the later of:
>
> - the first day of the next plan year; or
> - the date Unum approves your evidence of insurability form.

Aff. of Holly Libby Ex. C at 18.  The Plan further explained that:

> **EVIDENCE OF INSURABILITY** means a statement of your or your dependent's medical history which Unum will use to determine if you or your dependent is approved for coverage . . .

Id. at 44.  Prior to January 1, 2006, Mr. Rowello's coverage already included basic death benefits and supplemental life insurance coverage in the amount of $80,000 that he had enrolled in

2

effective January 1, 2004.  SUMF ¶ 3.  In order to increase his life insurance benefits by an

additional $130,000, Mr. Rowello first submitted a document called a Statement of Insurability

form to Cooper, dated November 2, 2005, which contained five Employee Health Questions.  Id.

¶¶ 9–11, 16.  Cooper had the authority to approve coverage for amounts under $500,000 as long

as all five questions were answered "No."  Aff. of Holly Libby Ex. A. at 120.  Mr. Rowello

answered "No" to four of the five questions, but answered "Yes" to the following question that

appeared on the Statement of Insurability form:

> Within the past 10 years, have you received medical advice or sought treatment for
> stroke, congestive heart failure, chronic lung disease including emphysema, diabetes
> treated with insulin or oral medications, hepatitis (other than type A), cirrhosis of the
> liver, chronic renal Disease including hypertension or failure, systemic lupus or any
> connective tissue disease?

Aff. of Holly Libby, Ex. A at 134.  The form that Mr. Rowello signed also indicated that if any

question on the form was answered "Yes," then a second form, called an Evidence of Insurability

form, must also be completed as part of the coverage increase process.  It provided that:

> If I can answer "NO" to all questions above, then this Statement is approved and
> coverage can be granted. If I answer "YES" to any question above, then I must complete
> UnumProvident's Evidence of Insurability form (1143-01) which must be reviewed and
> approved by UnumProvident before coverage can become effective.

Id.  The Evidence of Insurability form would then be sent to Unum, and Unum would complete a

medical underwriting review to determine it was willing to provide the additional insurance

coverage.  SUMF ¶ 12.

    Plaintiff alleges that in addition to the Statement of Insurability, Mr. Rowello also

submitted the Evidence of Insurability form.  Pl. Resp. to Unum's SUMF ¶ 13.  Unum, however,

denies having ever received the Evidence of Insurability form.  Unum SUMF ¶ 13.  The

Statement of Insurability form was marked with a handwritten "* OK in Lawson."[1]  Sec. Am.

Compl. Ex. A.  Mr. Rowello paid the premiums for the additional $130,000 in supplemental life

insurance for almost six years, until his death.  Decl. of Norma Rowello ¶¶ 9–10, Ex. A, B.

After Mr. Rowello's death, Mrs. Rowello, as the named beneficiary of the Plan, applied

to Unum for her husband's basic and supplemental life insurance benefits on December 28,

2011.  Id. ¶ 7–8.  Unum paid Mrs. Rowello $25,000 in dependent life insurance benefits and

$147,000 in individual life insurance benefits, which included the $80,000 in supplemental

coverage that was in place prior to January 1, 2006.  SUMF ¶ 15.  However, in a letter dated

January 13, 2012, Unum denied Mrs. Rowello's application for the additional $130,000 in

supplemental benefits, indicating that it never received the Evidence of Insurability form and

thus did not have an opportunity to underwrite the application, and therefore the change in

coverage amount never became effective, according to the Plan terms.  Id. ¶ 16.  Unum also

indicates that because insurance premiums related to the group plan are forwarded to it on an

aggregate basis, it never even had knowledge of Mr. Rowello's attempt to increase his benefits

until a claim was filed.  Def. Mot. Summ. J. at 19.  On March 19, 2012, Mrs. Rowello appealed

Unum's decision, asserting that Unum lost the required Evidence of Insurability form.  SUMF ¶

19.  Unum denied her appeal.  Id. ¶ 20.  Following this denial, Cooper reimbursed Plaintiff for

the premiums it had collected from Mr. Rowello for the additional coverage, however, Mrs.

Rowello has not accepted these payments.  Id. ¶ 22; Pl. Resp. to Unum's SUMF ¶ 22.

Plaintiff subsequently filed this suit on July 12, 2012, naming Unum as the defendant.

Plaintiff sought to enforce her rights as the beneficiary of an ERISA plan under the authority of

---

[1] Plaintiff has interpreted the handwritten marking to read "* OK M Lawson."  See Decl. of Norma Rowello ¶ 9.
Unum indicates that Lawson is the name of the payroll software system utilized by Cooper.  See Unum Mot. Summ.
J. at 19 n.5.  While it is difficult to make out the writing, the "in Lawson" interpretation is used in the Opinion
because Plaintiff does not present an explanation as to who or what "M Lawson" might refer to.

29 U.S.C. § 1332(a). On August 15, 2012, Plaintiff amended her complaint to add HCB as a defendant. See Am. Compl. ¶¶ 6-7. Then, on January 17, 2013, Plaintiff filed a Second Amended Complaint adding Cooper as a defendant. Sec. Am. Compl. ¶¶ 27-35. Plaintiff did not assert any ERISA claims against Cooper, but asserted state law claims for negligence and breach of contract against Cooper. Id. Pursuant to an Order filed on October 23, 2013, the state law claims were dismissed as preempted by ERISA's statutory framework. See Opinion of October 23, 2013 (ECF Doc. No. 58).

## II. LEGAL STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (quoting First National Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. Anderson, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in her favor. Id. at 255; Matsushida, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. Anderson, 477 U.S. at 256. The nonmoving party must

at least present probative evidence from which jury might return a verdict in his favor. Id. at

257. The movant is entitled to summary judgment where the non-moving party fails to "make a

showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317,

322 (1986).

## III. DISCUSSION

Unum and Plaintiff agree that an "arbitrary and capricious" standard of review applies to

the claim decision made by Unum, but disagree as to whether the decision was in fact arbitrary

and capricious. Plaintiff also argues that Unum's motion should be denied and her motion

should be granted based on the application of the equitable estoppel doctrine. These issues are

considered in turn.

## A. Arbitrary and Capricious Review

This case arises under the Employee Retirement Income Security Act ("ERISA"), 29

U.S.C. § 1001 et seq., and is brought under the civil enforcement provision of 29 U.S.C. §

1132(a)(1)(B). When the Supreme Court considered "the appropriate standard of judicial review

of benefit determinations by fiduciaries or plan administrators under § 1132(a)(1)(B)," it found

that when a plan grants the "administrator or fiduciary discretionary authority to determine

eligibility for benefits," the court is to review the decision under "a deferential standard of

review," overturning the benefit decision only upon a finding of abuse of discretion.

Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008) (quoting Firestone Tire & Rubber

Co. v. Bruch, 489 U.S. 101 (1989)).

Another factor is whether a plan gives discretion to an administrator "who is operating

under a conflict of interest." Such a conflict must be taken into consideration when determining

if an abuse of discretion took place. Glenn, 554 U.S. at 110–11 (quoting Firestone Tire &

Rubber Co. v. Bruch, 489 U.S. 101 (1989)). A dual role as claim administrator and payer of

benefits can potentially create a conflict of interest. Id. at 108. However, where a plan

administrator "has taken active steps to reduce potential bias," such a potential conflict of

interest is "less important (perhaps to the vanishing point)." Id. at 117. Such steps to reduce

potential bias may include "walling off claims administrators from those interested in firm

finances." Id.

When the abuse-of-discretion standard applies, a court may set aside an administrator's

discretionary decision only when it is "arbitrary and capricious." Miller v. Am. Airlines, Inc.,

632 F.3d 837, 844 (3d. Cir. 2011). A decision is arbitrary and capricious when it is made

"without reason, unsupported by substantial evidence or erroneous as a matter of law." Id. at

845 (quoting Abnathya v. Hoffman-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993)). In applying

this "highly deferential standard," the Third Circuit has indicated that there is "substantial

evidence if there is sufficient evidence for a reasonable person to agree with the decision."

Courson v. Bert Bell NFL Player Ret. Plan, 214 F.3d 136, 142 (3d Cir. 2000) (internal citations

omitted). Moreover, the "scope of review is narrow and the court is not free to substitute its own

judgment for that of the defendant's in determining eligibility for plan benefits." Abnathya, 2

F.3d at 45 (internal citations omitted). The administrator's interpretation of the plan must be

"rationally related to a valid plan purpose and [] not contrary to the plain language of the plan."

Dewitt v. Pen-Del Directory Corp., 106 F.3d 514, 520 (3d Cir. 1997).

Here, it is clear that the policy grants Unum discretionary authority to determine benefit

eligibility; thus, the deferential, arbitrary and capricious standard of review is appropriate.

SUMF ¶ 4C. Plaintiff agrees that this is the appropriate standard of review. Pl. Opp'n at 4-5.

Although Unum is the claim administrator and determines if participants are eligible for benefits, an employee of the Appeals Unit of Unum Group, David Fairchild, submitted a sworn declaration indicating that the Benefit Center, where Unum makes the initial determination of benefit eligibility, and the Appeals Unit, which decided Plaintiff's claim appeal, are located in separate buildings, have separate management structures, and have no contact concerning initial claim decisions. Decl. of David Fairchild ¶¶ 1, 3, 4, 6. Fairchild also indicated that no one involved in the claim decisions has any role in Unum's finances or access to information regarding its profit and loss. Id. ¶¶ 12-13. Moreover, he indicates that Appeals Unit employees have no financial incentive to deny claims, as they are paid on a salary and are evaluated by their employer on "among other things, [ ] customer service skills, the timeliness of [ ] work, and the accuracy of [ ] decisions . . . ." Id. ¶ 12. Plaintiff provides no evidence that a conflict of interest exists other than Unum's dual role as a claim administrator and payer of benefits, which does not itself make a decision arbitrary and capricious. See Glenn, 554 U.S. at 115. See also Estate of Schwing v. Lily Health Plan, 562 F.3d 522, 525 (3d Cir. 2009) (courts should apply a deferential standard of review even where a potential conflict exists "and consider any conflict of interest as one of several factors in considering whether the administrator or the fiduciary abused its discretion.").[2] The undisputed evidence submitted by Unum demonstrating a separation of its claims units from business units appears to minimize the weight of the potential conflict of interest.

Further, because potential conflict of interest is only one factor, Plaintiff must make some other showing that Unum's claim decision constituted an abuse of discretion. The key question in evaluating Plaintiff's arguments is whether sufficient evidence existed so that a reasonable

---

[2] The Third Circuit also indicated in Schwing that the "arbitrary and capricious" and "abuse of discretion" standards "are practically identical." Id. at 526 n.2.

person could agree with Unum's decision. <u>Courson</u>, 214 F.3d at 142. In support of her claim

that Unum's decision was arbitrary and capricious, Plaintiff argues that Mr. Rowello provided,

and Unum received, the necessary Evidence of Insurability form that was required in order for

his increased benefits to be approved. As evidence of this, Plaintiff makes two arguments. First,

she argues that the handwritten note on the Statement of Insurability form that reads in part

"OK" is evidence that "Mr. Rowello unequivocally filled out both forms . . . ." Decl. of Norma

Rowello ¶¶ 9–10; Pl. Opp'n at 2. Second, Mrs. Rowello states in a sworn declaration that an

unnamed employee in the Cooper Human Resources Department informed her that the Evidence

of Insurability form "was just misplaced and the matter would be rectified." Decl. of Norma

Rowello ¶ 14. Unum, on the other hand, indicates that it never received the Evidence of

Insurability form, and that the administrative record indicates that only the Statement of

Insurability was in Mr. Rowello's file. Def. Mot. Summ. J at 17. It points to a fax sent from

Yvonne Richards, a Benefits Specialist at Cooper, to Holly Libby, a Unum employee who

processed Mr. Rowello's claim. Ms. Richards indicates on the cover page to the January 6, 2012

fax "here is the only EOI short form I could locate in Steve Rowello's file . . . ." Aff. of Holly

Libby, Ex. A at 133-34. The fax contains one page in addition to the cover page, which is a copy

of the Statement of Insurability form, on which Mr. Rowello had answered "Yes" to one of the

health-related questions. <u>Id.</u> Unum thus argues that it was never able to conduct a medical

underwriting and therefore, according to the terms of the Plan, the coverage increase never went

into effect. Def. Mot. Summ. J.at 19.

In evaluating Unum's motion for summary judgment, the Court must draw all reasonable

inferences in Plaintiff's favor. <u>Matsushida</u>, 475 U.S. at 574. However, a party opposing a

summary judgment motion cannot rely upon "bare assertions, conclusory allegations, or

suspicions" to defeat summary judgment. Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Even drawing all inferences in Plaintiff's favor, Plaintiff fails to present more than a "conclusory allegation" that Unum received the Evidence of Insurability form. There is no evidence in the record to indicate that when someone from Cooper writes "OK" on the Statement of Insurability form, it indicates that the Evidence of Insurability—a different form—was completed and submitted to Unum, which is what Plaintiff believes that such a notation "unequivocally" means.[3] Further, even if someone from Cooper told Mrs. Rowello that the form was "misplaced," that does not support a finding that the form was sent to Unum. Plaintiff has not identified the employee from Cooper who indicated that the Evidence of Insurability form was misplaced, has not produced the completed form, and has not produced any employee of Cooper or any other witness who indicates that the form was sent to Unum. Although Plaintiff contends that Unum has a conflict of interest in seeking to deny claims, it is unclear what incentive anyone from Cooper would have to hide the fact that the form was actually sent to Unum, if that were the case. See Pl. Opp'n at 6. Because Plaintiff provides no credible evidence that Unum received the form and approval by Unum, and the Plan provides that supplemental life insurance is contingent upon receipt of the form, the decision was based on substantial evidence with respect to the Evidence of Insurability form.

Further, there is no evidence indicating that Unum ever received the Statement of Insurability form, which would have alerted it to the need for further action, due to the fact that Mr. Rowello answered "Yes" to one of the questions. Unum has submitted evidence that Cooper had the authority to approve coverage for amounts under $500,000 without submitting any

---

[3] While the Court does not decide exactly what is handwritten on the Statement of Insurability form, if Lawson is indeed the name of Cooper's payroll system, as Unum asserts, the most likely meaning of "OK in Lawson" is that the additional premiums were entered in the payroll system so that they could be withdrawn from Mr. Rowello's paychecks, which is not in dispute.

information to Unum as long as all of the questions were answered "No." Def. Mot. Summ. J. at 19 n.5; Aff. of Holly Libby Ex. A. at 120.

Plaintiff does not provide any other arguments that support her assertion that Unum's decision was arbitrary and capricious, aside from Unum having collected the premium payments. Pl. Opp'n at 6. This issue is discussed in the next section, as the collection of premium payments relates primarily to Plaintiff's equitable estoppel argument. The Court finds that Unum's decision was not arbitrary and capricious because it was based upon substantial evidence. Unum's records, as demonstrated by its affidavits and exhibits, support a finding that it did not receive any Evidence of Insurability form from Cooper or from Mr. Rowello, and Plaintiff fails to offer any evidence that could led a reasonable finder of fact to conclude that Unum received it or knew of its existence. Although Mrs. Rowello discussed the missing form with a Cooper employee, according to the Plan, Cooper is not to "be deemed the agent of Unum." Decl. of Sally Quinn ¶ 5; Aff. of Holly Libby Ex. C at 25. Therefore, even if Cooper did receive and misplace the form, that action could not be attributed to Unum. Because there is sufficient evidence that the form was never received or processed by Unum, there was a reasonable basis for Unum to conclude that Mr. Rowello's supplemental benefit increase never became effective according to the terms of the Plan. The handwritten note on the Statement of Insurability form has no connection to Unum nor does it prove, or even imply that Unum received the Evidence of Insurability form. The only factor presented by Plaintiff that weighs in favor of the decision being arbitrary and capricious is a potential conflict of interest by Unum, which, for the reasons described, is insufficient to support such a finding.

For the foregoing reasons, the Court finds that Unum's claim decision was not arbitrary and capricious.

**B. ERISA Estoppel**

Plaintiff further argues that Unum should be equitably estopped from denying

supplemental life benefits because it received premiums for nearly six years for the increased

supplemental life coverage.  She grounds this argument in the provision of ERISA that enables

"a participant or beneficiary, or fiduciary . . . to obtain other appropriate equitable relief" to

remedy ERISA violations or to enforce provisions of the plan.  29 U.S.C. § 1132(a)(3). Such

"other appropriate equitable relief" can include remedies traditionally available at equity,

including estoppel.  CIGNA Corp. v. Amara, 131 S. Ct. 1866, 1881 (2011).  In order to impose

equitable estoppel, there must be "(1) a material representation, (2) reasonable and detrimental

reliance upon the representation, and (3) extraordinary circumstances." Curcio v. John Hancock

Mut. Life Ins. Co., 33 F.3d 226, 235 (3d Cir. 1994) (citing Smith v. Hartford Ins. Grp., 6 F.3d

131, 137 (3d Cir. 1993)).

A material misrepresentation exists "if there is a substantial likelihood that it would

mislead a reasonable employee in making an adequately informed decision."  Fischer v.

Philadelphia Elec. Co., 994 F.2d 130, 135 (3d Cir. 1993).  "[A]ny provision of a plan subject to

ERISA that establishes a benefit" is considered material.  Curcio, 33 F.3d at 237.  In Curcio, the

Third Circuit found that there was a material misrepresentation when an employer hospital

discussed two types of insurance together, resulting in a representation that both types of

insurance would be increased together. 33 F.3d at 236–37.

In the instant case, there is no indication that Unum represented to Mr. Rowello that the

increased coverage had been approved.  Although Cooper may have represented to Plaintiff that

the additional coverage existed, there was no direct contact between Mr. Rowello and Unum, nor

any statements by Unum assuring him that the coverage existed.  There is no evidence that

Unum made any representation at all to Mr. Rowello, or any evidence that Cooper based its representations about Mr. Rowello's coverage upon information received from Unum.

The Third Circuit has found that the second element, reasonable and detrimental reliance, existed where a decedent discussed with his spouse his satisfaction with the protection offered by certain life insurance coverage, because it indicated that the decedent gave up the opportunity to satisfy his insurance needs through independent insurance coverage. Curcio, 33 F.3d at 237. In this case, Mrs. Rowello declared in a sworn statement that she "recall[ed] the conversation with [her] husband discussing his contentment with increasing the life insurance amount." Decl. of Norma Rowello ¶ 12. This conversation Mrs. Rowello had with her husband is similar to the one in Curcio, and therefore if a material misrepresentation had actually been made by Unum, Mr. Rowello could be said to have reasonably and detrimentally relied upon it.

Finally, extraordinary circumstances must be established in order to prevail on an equitable estoppel claim. Although this term has not been clearly defined, the Third Circuit has found extraordinary circumstances in cases "where there are 'affirmative acts of fraud or similarly inequitable conduct by an employer[,]' or a 'network of misrepresentations that arises over an extended course of dealing between parties," while also considering "the vulnerability of particular plaintiffs." Kapp v. Trucking Emps. of North Jersey Welfare Fund, Inc., 426 F. App'x. 126, 130 (2011) (citing Kurz v. Philadelphia Elec. Co., 96 F.3d 1544, 1553 (3d Cir. 1996)). Additionally, in Curcio, the Court found that extraordinary circumstances existed when a decedent's employer not only misrepresented the specific coverage available, but also encouraged the plaintiff to pursue a claim against the insurance company, urging the insurance company to pay the claim before having a change of heart and arguing that the coverage did not exist. Curcio, 33 F.3d at 238. Here, Plaintiff has made no showing of extraordinary

13

circumstances with respect to Unum.  There is nothing in the record indicating any fraudulent or inequitable conduct by Unum or anything else that resembles circumstances that courts have found to be "extraordinary."

Plaintiff relies heavily on Amara in support of her claim that equitable estoppel applies. That case involved Cigna Corporation's failure to give adequate notice to employees when its pension plan changed, which is not analogous to the instant case before the Court.  131 S. Ct. at 1870.  It clarified that "the term 'appropriate equitable relief'" in Section 1132(a)(1)(B) refers to "'those categories of relief' that, traditionally speaking 'were typically available in equity'" and reinforced that detrimental reliance is required.  Id. at 1881–82, 1878 (quoting Sereboff v. Mid Atlantic Medical Servs., Inc., 547 U.S. 356, 361 (2006) (emphasis omitted)).  Amara does little for Plaintiff except establish that equitable relief is available in the ERISA context if an entitlement to relief can be shown under a particular equitable theory.  Id. at 1879-82.[4]

This case is factually closer to Gridley v. Cleveland Pneumatic Co., 924 F.2d 1310 (3d Cir. 1991), where premiums for increased insurance benefits were deducted from the decedent's paycheck but the insurance company determined upon his death that he was not eligible because he was never an active employee, dating back to the time he applied for the increased coverage. The overpaid premiums were returned and the Third Circuit found the plaintiff failed to fulfill the requirements of equitable estoppel.  Id. at 1320-21.

Additionally, Plaintiff's case is factually similar to a number of cases decided in other districts, where equitable estoppel was not applied.  In one case, involving Unum as the defendant, the plaintiff had been denied a claim for increased benefits because the decedent

---

[4] Plaintiff makes two references to "McCravy" when discussing the Amara case.  See, e.g., Pl. Opp'n at 7 ("With Amara, the Supreme Court has put these perverse incentives to rest and paved the way for McCravy to seek a remedy beyond a mere premium refund.").  It is unclear from Plaintiff's brief who "McCravy" refers to.  The Court was unable to find context for this name in the Amara case or elsewhere in Plaintiff's brief.

failed to complete and submit an Evidence of Insurability form. <u>Meltzer-Marcus v. Hitachi</u>

<u>Consulting</u>, Civ. No. 03-7687, 2005 WL 2420367 (N.D. Ill. Sept. 30, 2005). The plaintiff argued

that the decedent had a "reasonable expectation" that he had life insurance in an increased

amount because he confirmed the amount a number of times with his employer. <u>Id.</u> at *8. The

district court found that equitable estoppel was unavailable because there was no evidence

demonstrating that Unum misrepresented any information or material facts. <u>Id.</u> In fact, the court

found that if the decedent's employer had made misrepresentations to its employee, there was

nothing in the record to suggest that the representations were based on information provided by

the insurer. <u>Id.</u> The court also found that even if the plaintiff "paid and Unum received

premiums based on [the increased amount] of coverage . . . payment of premiums does not

override the Group Policy's requirements that evidence of insurability must be submitted to and

approved by Unum" before the increase coverage is effective. <u>Id.</u> at *6. While that case is not

controlling law, this Court observes the similarities and agrees with the analysis as to the

estoppel issue in that case. <u>See also</u> <u>O'Connor v. Provident Life and Acc. Co.</u>, 455 F. Supp. 2d

670, 678 (E.D. Mich. 2006) (rejecting an estoppel argument under similar circumstances where

there was "no evidence that the defendant was attempting to reap an unjust benefit by extracting

premiums from the decedent when it knew it had a defense to coverage . . . ."); <u>Lawler v. Unum</u>

<u>Provident Corp.</u>, Civ. No. 05-71408, 2006 WL 2385043 at *3 (E.D. Mich. Aug. 17, 2006)

(rejecting an equitable estoppel claim against the insurer when an Evidence of Insurability form

was not submitted, even though the policyholder had paid premiums for eight years.); <u>Colardo v.</u>

<u>Metropolitan Life Ins. Co.</u>, Civ. No. 10-1615, 2011 WL 1899253 at *4 (M.D. Fla. Mar. 16.

2011) (rejecting an equitable estoppel argument when no record of an Evidence of Insurability

form was found by the employer or insurer after the decedent's death, and premiums had been withheld from the decedent's salary for two years).

It appears that Plaintiff's sole argument for estoppel is that Mr. Rowello paid the premiums for the increase in supplemental life insurance coverage. As Unum indicates, the administrative record shows that Unum did not know that these premiums were being paid for Mr. Rowello's supplemental insurance until after a claim had been submitted, when it requested proof from Cooper that Mr. Rowello had paid his premiums up until the date of his death. Unum Reply at 7; Aff. of Holly Libby Ex. A. at 130. As discussed, payment of premium alone is not sufficient to invoke estoppel. But, even if the payment of premium was sufficient to support a finding of estoppel, it is unclear how Unum could have known that Mr. Rowello was being charged premiums by Cooper for his particular coverage increase that never became effective.

Here, two of the three required elements for equitable estoppel are not satisfied. As sympathetic as the Court may be to Plaintiff's plight, the factual background of this case clearly does not support the invocation of equitable estoppel.[5]

**IV. CONCLUSION**

For the foregoing reasons, the motion for summary judgment filed by Unum will be **GRANTED**. The cross-motion for summary judgment by Plaintiff will be **DENIED**. An appropriate order shall enter.

Dated: 12/13/2013                          /s/ Robert B. Kugler
                                                  ROBERT B. KUGLER
                                                  United States District Judge

---

[5] Unum also argues that although Plaintiff claims it is a fiduciary, it owes no fiduciary duty to Plan participants except with respect to administration of claims. See Unum Reply at 7-8. It argues that it therefore cannot be held liable through invocation of estoppel for the actions of Plan administrators. Id. at 3. Because Plaintiff has not shown that estoppel should apply regardless of Unum's fiduciary status, the Court does not consider this argument.